**RAILROAD COMMISSION OF TEXAS et al. v. ROYAL PETROLEUM CORPORATION.**

**No. 4547.**

Court of Civil Appeals of Texas. Amarillo.

March 9, 1936.

Rehearing Denied May 4, 1936.

Wm. McCraw, Atty. Gen., and Harry Pollard, Asst. Atty. Gen., for appellant Railroad Commission of Texas.

T. L. Foster, of Dallas, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellant Sun Oil Co.

Storey, Sanders & Sherrill, of Dallas, and White, Taylor & Gardner, of Austin, for appellee.

HALL, Chief Justice.

The appellee corporation sued the Railroad Commission and other parties (such other parties being later dismissed) in the nature of an appeal from an order of the Railroad Commission refusing appellee a permit to drill well No. 2 on a tract of 4.06 acres in the Juan Ximines survey in Rusk county.

It alleged that in 1930 it purchased a leasehold interest covering 5 acres of land, but because of an outstanding one-sixth undivided interest, appellee was required to release .87 acre to the outstanding one-sixth owner, leaving appellee the owner of 4.06 acres. That it had originally endeavored to obtain consent of adjoining lease owners for the drilling of one well in the center of its tract, but failed. It alleged that it already had one producing well on the leasehold interest, and that on the 30th day of August, 1934, it applied for a permit to drill well No. 2 on said tract, and appeared before the Railroad Commission on the day set for the hearing, and thereafter an order was entered denying it permission to drill said well. That it was originally granted a permit to drill a well in the center of the tract, but on account of an offset well being drilled within approximately 100 feet of its east line, that permit was changed and it drilled its well No. 1 at a point equidistant to the offset on the east which was approximately 96 feet. That appellee then applied for a permit to drill at the original location, which was in the center of its tract, and an equidistant offset to the Miller Production Company well No. 7. This permit was denied, and by the same order the previous permit No. 1 was canceled.

The purpose of this suit was to enjoin the Railroad Commission from interfering in any way with appellee's drilling of the well at the location stated in the application. It alleged that the Miller Production Company had an offset well No. 7 west of its line within 249.5 feet of its west line, and well up to the north, known as the Ortiz Oil Company well, located approximately 16.2 feet from its north line; that the Trice Oil Company had an offset well to its well No. 1 located approximately 9.5 feet to the east, and the Sun Oil Company well No. 14, located 290 feet to the south, and Sun Oil Company well No. 7, located 329.5 feet to the southwest. That the action of the Railroad Commission in refusing said permit to drill in the center of the tract was arbitrary, unjust, and unreasonable, and amounted to a confiscation of a portion of the oil, gas, and minerals underlying appellee's tract.

The case was tried to the court without a jury, and resulted in a judgment in favor of appellee, Royal Petroleum Corporation, enjoining the Railroad Commis-

sion and the Sun Oil Company, which had intervened, from in any manner interfering with the drilling of a well·for oil and gas by appellants, or either of them, at a point 249.5 feet east of the west line of its tract, and that such well if drilled would be a direct and equidistant offset to the Miller Production Company well No. 7.

There was testimony that if appellee was denied the right to drill this second well, such denial would cause confiscation of its property and drainage thereof to the extent of some 25 to 30 per cent of its oil, gas, and minerals.

Plaintiff's amended petition, on which it went to trial, reads in part as follows: "Now comes Royal Petroleum Corporation, plaintiff herein, leave of court first had and obtained, complaining of the Railroad Commission of Texas, and Lon A. Smith, C. V. Terrell and Ernest O. Thompson, each in their capacity as members of the Railroad Commission of Texas, defendants herein, and for cause of action would respectfully show to the court * * *."

It is contended by the first two propositions that because the plaintiff's petition does not allege that the Royal Petroleum Corporation is an individual acting under a trade-name, and does not allege that such is either a partnership, a corporation, or any other type of legal entity, the petition does not name a party plaintiff, and no issue can be joined thereunder, and that the judgment was erroneously rendered because the plaintiff failed to show that it was a legal entity and capable in law of maintaining a suit.

The defendants and intervener filed general demurrers and special exceptions, but they were not presented to the court.

It is said in Southern Casualty Co. v. Morgan (Tex.Com.App.) 16 S.W.(2d) 533: "General demurrer was pleaded, but it was not presented and given disposition. Hence, it·was waived. Indiana & Ohio Live Stock Co. v. Smith (Tex.Civ.App.) 157 S.W. 755, and cases therein cited. The question (of insufficiency of the petition) is raised after verdict and judgment, and, so, at a time when all that is possible must be presumed in aid of the pleading (See Schuster v. Frendenthal, 74 Tex. 53, 11 S.W. 1051) and at a time when the answer may help the petition (See Pope v. Kansas City, M. & O. Ry. Co., 109 Tex. 311, 322, 207 S.W. 514)."

The petition, we think, is sufficient, even if the general demurrer had been urged. We must indulge every reasonable intendment in favor of its sufficiency, and it would be an unreasonable assumption to hold that an individual or a partnership was doing business under the name of a corporation. Grand Lodge, Colored Knights of Pythias v. Rhodes (Tex.Civ.App.) 72 S.W.(2d) 1106; Employers' Liability Assurance Corporation v. Neely (Tex.Civ.App.) 60 S.W.(2d) 836; Lone Star Finance Corporation v. Davis (Tex.Civ.App.) 77 S.W.(2d) 711; Nelson v. Brenham Compress Oil & Mfg. Co. (Tex.Civ.App.) 51 S.W. 514.

The third and fourth propositions submitted together present the contention that because the plaintiff's pleadings on an appeal from an order of the Railroad Commission complains only of the portion of the order denying the permit to drill well No. 2, and makes no reference to the remaining portion of the order which cancels an abandoned permit to drill well No. 1, the court erred in rendering a judgment overruling a portion of the order canceling said abandoned permit; that such action is error for the further reason that the prayer in plaintiff's petition asked for no such action with reference to the abandoned permit No. 1.

It is an elemental rule that the judgment must be supported by the pleading and prayer, as well as by the evidence, and the court can grant no relief unless specially prayed for, except in certain limited cases where such relief would be allowable under the prayer for general relief. We assent to this contention, which is sustained by an innumerable number of cases, among them being Baria v. Taylor (Tex.Civ.App.) 57 S.W.(2d) 858; Norris v. Stoneham (Tex.Civ.App.) 46 S.W.(2d) 363; Jennings v. Texas Farm Mortgage Co. (Tex.Civ.App.) 52 S.W.(2d) 272; Id., 124 Tex. 593, 80 S.W.(2d) 931; Perkins v. Campbell (Tex.Civ.App.) 63 S.W.(2d) 567; Bevers v. Hughes (Tex. Civ.App.) 195 S.W. 651.

By the fifth and sixth propositions contention is made that because the plaintiff did not allege what facts were presented to the commission, and what facts the commission had before it as a basis for its order, the pleading was insufficient to

support a judgment of the trial court overruling the order of the commission, and further contends that because no testimony was offered showing what evidence the commission had at the time of the hearing as a basis for its action, and failed to show what evidence was introduced at the hearing, the plaintiff has failed to discharge the burden upon him requiring him to show that the order complained of is unjust and unreasonable and has no proper basis.

■■■ In numerous cases the rule is announced that orders of the commission within its delegated authority are immune from collateral attack unless they appear to be void on their face. Otherwise, their validity is conclusively presumed, unless brought in question in a direct proceeding instituted for that purpose under statutory authority. Railroad Commission v. Marathon Oil Co. (Tex.Civ.App.) 89 S.W.(2d) 517, 519, and cases cited. In that case Judge McClendon stated the well-established rule that the courts are not concerned with the wisdom or policy of rule 37; that these matters are exclusively the prerogative of the Railroad Commission, and that its action could not be reviewed by the courts except by direct proceeding, and then only to determine whether such action has reasonable factual basis for its support; that the resolving of divergent conclusions arrived at from conflicting theories and conclusions of experts are issues solely within the commission's jurisdiction. This has become settled law, as declared in the following cases: Atlantic Oil Production Co. v. Railroad Commission (Tex.Civ.App.) 85 S.W.(2d) 655; Brown v. Humble Oil & Refining Co. (Tex.Sup.) 83 S.W.(2d) 935, 99 A.L.R. 1107; Humble Oil & Refining Co. v. Railroad Commission (Tex. Civ.App.) 83 S.W.(2d) 695; Shupee v. Railroad Commission, 123 Tex. 521, 73 S.W.(2d) 505; Shell Petroleum Corporation v. Railroad Commission (Tex.Civ. App.) 86 S.W.(2d) 57.

■ The further contention, that a permit to drill the second well on the 4.06-acre tract as an exception to rule 37 violates the spacing provisions of the rule, and each amendment thereto, must be sustained. There is evidence which tends to show that the 4.06-acre tract was adequately developed without the necessity of drilling a second well thereon, and that during the life of the field one well would produce more oil than was originally underlying the tract. We think this contention is sound.

■ Furthermore, the action of the Railroad Commission may be justified under the subdivision rule.

The record shows that the original oil and gas lease from Daisy Bradford to Joiner covered 975½ acres, and was executed in 1925. That in 1929 Joiner subdivided 900 acres of the lease into twenty-one different divisions, one of them being numbered 6, containing 43 acres. That this subdivision was further subdivided, and out of it was created the leases lying west, north, and east of appellee's tract, as well as appellee's tract itself. That appellee's tract is a part of the subdivision of 11½ acres of this same land, and was supposed to contain approximately 5 acres. That at the time of the subdivision of the 11½ acres, appellee was unable to obtain a conveyance from one of the owners of an undivided interest in the 11½-acre tract, and therefore he and such owner became, by operation of law, cotenants in the 11½ acres. That thereafter, in 1933, these cotenants agreed to further subdivide appellee's tract by cutting off .81 acre. There was evidence before the commission denying appellee a right to drill a second well on its small tract, and the trial court was not authorized to overturn this order of the commission and substitute its judgment for the commission's order.

In Stewart v. Smith, 83 S.W.(2d) 945, 946, the Supreme Court quoted with approval the following excerpt from the opinion of the Court of Civil Appeals:

" 'It is clear, under the record presented, that Edmon Smith and wife held title by limitation to this narrow strip of land at the time they leased the 53⅓ acres in 1929; that said strip was contiguous to that 53⅓ acres, under the same fence, claimed by them as their own, and had been for many years. In leasing the 53⅓ acres adjoining it, they voluntarily segregated it from the Sun Oil Company's tract. Rule 37 of the Railroad Commission then in force has so often been quoted, with its various amendments, that it need only be referred to here. It is obvious that to develop this strip of land retained by the Smiths and subsequently leased to others would require an exception to rule 37 on the ground of vested rights. To drill

it otherwise would be in violation of its well-known spacing rules then in force. We conclude, therefore, that no right to such an exception having existed in Edmon Smith and wife, because of their voluntary act in April, 1929, when rule 37 was in full force, none could subsequently be acquired by their vendees, grantees, or lessees. Under this conclusion a permit to appellee to drill said well, as a matter of law under the undisputed facts, was not authorized and the refusal of the Railroad Commission to grant same was proper.

" 'In no event could Stewart and Hart, by partition or otherwise, in August, 1933, in the face of rule 37 as then amended, by their own acts create a condition which would vest in them any right to an exception to said rule. To permit them to do so would, as we have already observed, set at naught rule 37 and the conservation laws of the state.' [Tex.Civ.App.] 68 S. W.(2d) 627."

There are other contentions urged in appellant's brief which we think are unnecessary to be discussed.

We are asked to reverse the judgment and render it for appellant. Because the case has not been properly pleaded and has not been fully developed upon the trial, the proper disposition to make of it is to reverse the judgment and remand the case for a new trial, and it is accordingly so ordered.